# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

**DARRELL LEON McCLANAHAN III,**
Plaintiff,

v.                                          **Case No.**

**J. RONALD CARRIER,** in his individual capacity;
**MATTHEW THOMAS WEATHERMAN,** in his individual capacity;
**LORI JONES,** in her individual and official capacity;
**MARSHA STILES,** in her individual capacity;
**MATTHEW CROWELL,** in his individual capacity;
**STATE OF MISSOURI,**
Defendants.

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**42 U.S.C. § 1983, § 1985; 28 U.S.C. § 2201, § 2202**

## NATURE OF ACTION

**1.** This is an emergency civil rights action seeking immediate injunctive relief to prevent Plaintiff's trial on December 18, 2025, without constitutionally adequate, conflict-free counsel, in direct violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**2.** This case presents the nightmare scenario the Framers sought to prevent: a citizen prosecuted by the government while simultaneously denied the means to

1

defend himself because that same government controls his defense counsel through executive appointments.

**3.** For over thirteen (13) months, state actors have constructively denied Plaintiff conflict-free counsel through a systematic pattern of obstruction, retaliation, and bad faith that has now been **admitted in writing by Missouri's own Attorney General.**

**4.** Plaintiff is not asking this Court to second-guess a state court's judgment. Plaintiff asks this Court to act where Missouri's system has catastrophically failed for 13 months despite three petitions to the Missouri Supreme Court, all denied. The Missouri Attorney General has admitted in writing in Cole County Case No. 25AC-CC06707 that Plaintiff was knowingly denied conflict-free counsel for 87 consecutive days. No state remedy remains.

**5.** If this Court does not act, Plaintiff will be forced to trial on December 18, 2025, without counsel, completing an irreversible constitutional violation.

**6.** This action also seeks declaratory relief that Missouri's public defender appointment system, as applied to Plaintiff, violates the Sixth Amendment's guarantee of conflict-free counsel due to executive branch control over a judicial branch function.

## JURISDICTION AND VENUE

**7.** This Court has subject matter jurisdiction under:

- 28 U.S.C. § 1331 (federal question jurisdiction);

- 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction);

- 42 U.S.C. § 1983 (deprivation of constitutional rights under color of state law);

- 42 U.S.C. § 1985(3) (conspiracy to deprive civil rights);

- 28 U.S.C. § 2201 and § 2202 (Declaratory Judgment Act).

2

**8.** Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Wright County, Missouri, which lies within the Western District of Missouri, Southern Division.

**9.** This Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 and 65.

**PARTIES**

**PLAINTIFF**

**10.** Plaintiff **Darrell Leon McClanahan III** is a 58-year-old disabled resident and citizen of Vernon County, Missouri. He is the primary caregiver for his four minor children. He is indigent, as formally determined by the Wright County Circuit Court on October 29, 2024. He is a defendant in pending criminal proceedings in Wright County Circuit Court, Case No. 22WR-CR00256, with trial currently scheduled for December 18, 2025.

**11.** Plaintiff is a former political candidate who ran for United States Senate in Missouri in 2022 against then-Attorney General Eric Schmidt, and for Governor of Missouri in 2024 against then-Lieutenant Governor and current Governor Mike Kehoe. Both officials now control—through gubernatorial appointment authority—the Missouri State Public Defender System that has been appointed to represent Plaintiff.

**DEFENDANTS**

**12.** Defendant **J. Ronald Carrier** is an Associate Circuit Judge for the 31st Judicial Circuit of Missouri, sitting by assignment in Wright County. He presided over proceedings in *State v. McClanahan*, Case No. 22WR-CR00256. Judge Carrier is sued in his **individual capacity** for actions taken outside his judicial authority and in clear violation of Plaintiff's clearly established constitutional rights.

**13.** Defendant **Matthew Thomas Weatherman** is the elected Prosecuting Attorney for Douglas County, Missouri. He is prosecuting *State v. McClanahan*, Case No. 22WR-CR00256, by appointment to Wright County. He is sued in his **individual**

3

**capacity** for knowingly proceeding with prosecution despite documented constitutional violations, including Brady violations and vindictive prosecution.

**14.** Defendant **Lori Jones** is the elected Circuit Clerk for Wright County, Missouri. She is sued in her **individual and official capacity** for systematic obstruction of access to courts, manipulation of court records, and acting with an inherent conflict of interest while being a named defendant in Plaintiff's related civil rights lawsuit, Vernon County Case No. 25VE-CV00685.

**15.** Defendant **Marsha Stiles** is a licensed attorney employed by the Missouri State Public Defender System (MSPD). She was appointed to represent Plaintiff in Case No. 22WR-CR00256. She is sued in her **individual capacity** for failing to provide conflict-free representation and prioritizing MSPD institutional interests over Plaintiff's constitutional right to conflict-free counsel.

**16.** Defendant **Matthew Crowell** is the Director of the Missouri State Public Defender System, appointed by the Missouri Public Defender Commission, whose members are exclusively appointed by the Governor under Mo. Rev. Stat. § 600.015. He is sued in his **individual capacity** for supervisory liability in maintaining a structurally conflicted public defender system that systematically denied Plaintiff effective, conflict-free counsel for 13 months.

**17.** Defendant **State of Missouri** is sued solely for **declaratory relief** regarding the constitutionality of Missouri's public defender appointment system as applied to Plaintiff.

## STATEMENT OF FACTS

### A. The Structural Constitutional Defect: Executive Control of Judicial Defense Function

**18.** The Missouri Constitution, Article V, § 10, explicitly places the Missouri State Public Defender System (MSPD) within the **judicial branch** of government.

**19.** However, Missouri Revised Statute § 600.015 gives the **Governor** (executive branch) exclusive power to appoint all seven members of the Missouri Public Defender Commission. The Commission, in turn, hires and fires the Director of MSPD (Defendant Crowell) and controls all policy decisions of MSPD.

4

**20.** The Missouri Department of Revenue (an executive branch agency) via data sharing controls sensitive indigent defendant data through the REAL ID system, giving the executive branch access to confidential defense information.

**21.** This structure creates an unconstitutional two-tier system of justice:

- **Tier One:** Defendants who can afford private counsel receive representation that is structurally independent of executive branch influence or control.

- **Tier Two:** Indigent defendants receive counsel whose leadership is appointed by, and accountable to, executive branch officials.

**22.** As applied to Plaintiff, this structural defect is not theoretical—it is operational and targeted:

- Plaintiff ran for U.S. Senate against then-Attorney General Eric Schmidt in 2022;

- Plaintiff ran for Governor against then-Lieutenant Governor (now Governor) Mike Kehoe in 2024;

- The executive officials Plaintiff opposed in elections now have plausible control and influence over his **prosecution** (through elected county prosecutors and the Attorney General's office) **and his defense** (through gubernatorial appointment of the Public Defender Commission);

- MSPD has prioritized protecting the system over providing Plaintiff conflict-free counsel, as proven by the 13-month denial and Attorney Stiles's August 22, 2025 memorandum claiming MSPD is an "Executive Agency."

**23.** This case is the rare circumstance where the structural conflict has resulted in actual, documented harm: Plaintiff has been denied conflict-free counsel for thirteen months while facing imminent trial.

### B. Formal Indigency Determination and Initial Appointment (October 29, 2024)

**24.** On October 29, 2024, the Wright County Circuit Court formally determined that Plaintiff is indigent and appointed the Missouri State Public Defender System to represent him in Case No. 22WR-CR00256.

5

**25.** Plaintiff's indigency status remains unchanged. He is unemployed, disabled, and the primary caregiver for four minor children.

### C. The Thirteen-Month Denial of Conflict-Free Counsel

### 1. July 29, 2025: Attorney Stiles Files Motion to Withdraw

**26.** On July 29, 2025, Attorney Marsha Stiles, Plaintiff's appointed counsel from MSPD, filed a "Motion to Withdraw" citing a conflict of interest.

### 2. August 1, 2025: Plaintiff's Comprehensive Response

**27.** On August 1, 2025, Plaintiff filed a comprehensive 36-page "Motion to Terminate Counsel and Response to Motion to Withdraw, Filed Out of Necessity."

**28.** This filing documented in extensive detail:

- All structural conflicts in MSPD representation arising from executive control;
- Specific instances of professional misconduct by Attorney Stiles;
- Prosecutorial misconduct and Brady violations by Prosecutor Weatherman;
- A pattern of judicial misconduct by Judge Carrier;
- Administrative obstruction by Circuit Clerk Jones;
- Systemic violations of Plaintiff's constitutional rights.

**29.** As a criminal defendant in Missouri, Plaintiff had the constitutional right under the Sixth and Fourteenth Amendments to respond to his attorney's motion to withdraw and to raise issues of ineffective assistance and conflict of interest.

### 3. August 22, 2025: The Trap Closes—Plaintiff Silenced for 87 Days

**30.** On August 22, 2025, Attorney Stiles **withdrew her own Motion to Withdraw**, effectively trapping Plaintiff with conflicted counsel.

**31.** Also on August 22, 2025, Attorney Stiles filed a "Memorandum Regarding the Appointment of Alternate Counsel" in which she made the startling admission that MSPD is an "Executive Agency" and argued this Court lacked authority to address conflicts within MSPD.

6

**32.** This admission is **false as a matter of Missouri constitutional law**—Missouri Constitution Article V, § 10 explicitly places MSPD in the judicial branch. However, the admission reveals the **operational reality**: MSPD functions as an executive-controlled entity due to gubernatorial appointment authority over the Commission.

**33.** On August 22, 2025, Judge Carrier denied Plaintiff's August 1, 2025 filing as "moot" without any merits review whatsoever. Judge Carrier's order stated only that Plaintiff's filing was "not endorsed by counsel."

**34.** This created an unconstitutional Catch-22:

- Plaintiff could not file without counsel's endorsement;

- But Plaintiff's counsel was the very person whose conflict Plaintiff was trying to raise;

- Plaintiff was prohibited from making pro se filings by Judge Carrier's May 16, 2025 order;

- Circuit Clerk Jones was returning Plaintiff's attempted filings without processing them.

**35.** From **August 22, 2025 through November 17, 2025—87 consecutive days**—Plaintiff remained without conflict-free counsel despite having given comprehensive, documented notice of the conflict.

### 4. The Missouri Attorney General's Smoking Gun Admission (November 7, 2025)

**36.** On November 7, 2025, in Cole County Circuit Court Case No. 25AC-CC06707 (*McClanahan v. Kehoe*), the Missouri Attorney General's Office filed a response containing the following admission:

"Defendant Stiles remains appointed as counsel and has not been permitted to withdraw."

**37.** This admission is a smoking gun. It establishes that Defendants **knowingly and deliberately** denied Plaintiff conflict-free counsel for 87 days, from August 22 through November 17, 2025.

7

**38.** This knowing denial eliminates any argument that the deprivation was inadvertent, negligent, or the result of administrative confusion. The State's own Attorney General admitted the State was preventing withdrawal while Plaintiff was requesting conflict-free counsel.

### 5. The Pattern of Systematic Obstruction (May-November 2025)

**39.** Throughout this period, Defendants engaged in a systematic pattern of silencing Plaintiff and preventing him from raising the conflict:

**40.** On **May 16, 2025**, Judge Carrier entered an order prohibiting Plaintiff from making any pro se filings while represented by counsel.

**41.** Between May and November 2025, Circuit Clerk Lori Jones **returned Plaintiff's correspondence without filing it** on at least six documented occasions.

**42.** On **October 20, 2025**, when Plaintiff's wife, April Miller, attempted to notify by filing documentation of the conflict on Plaintiff's behalf, Judge Carrier issued an order:

- Refusing to accept the filing;
- Threatening Ms. Miller with contempt of court;
- Threatening to revoke Plaintiff's own recognizance's bond if she or anyone else attempted to raise the conflict issue.

**43.** A third party media member, Eli James, also attempted to notify the court of the conflict citing public interest. Judge Carrier ignored all notifications.

### D. November 17, 2025: Unrepresented Questioning and Retaliatory Bond Condition

**44.** On November 17, 2025, a hearing was held in Case No. 22WR-CR00256. Attorney Stiles appeared and made an oral motion to withdraw as her conflict could no further be denied.

### 1. Plaintiff Invokes Fifth Amendment; Judge Carrier Questions Him Anyway

**45.** When Attorney Stiles moved to withdraw, Plaintiff, before and after, invoked his Fifth Amendment right to remain silent by stating clearly on the record:

8

"Your Honor, as the criminal defendant in this case, I will remain silent."

**46.** After Plaintiff invoked his Fifth Amendment right to silence, Judge Carrier **granted the withdrawal motion**, leaving Plaintiff **unrepresented**.

**47.** While Plaintiff was **unrepresented and without counsel present**, Judge Carrier engaged Plaintiff in conversation and manipulated, extracted, a fabricated statement.

**48.** The November 17, 2025 order states:

"Defendant advises he intends to retain counsel."

**49.** This statement **directly contradicts**:

- Thirteen months of documented requests for conflict-free **PUBLIC** counsel;
- Plaintiff's formal indigency determination of October 29, 2024, which remains in effect;
- Plaintiff's complete inability to afford private counsel;
- Plaintiff's August 1, 2025 filing requesting appointment of conflict-free public counsel from outside MSPD.

### 2. The Four-Day Impossible Deadline

**50.** Immediately after extracting or fabricating this statement, Judge Carrier imposed a new bond condition:

"Defendant must have counsel file an Entry of Appearance no later than 12:00 PM on 11-21-25."

**51.** This created a **four-day deadline** for an indigent defendant who cannot afford counsel to somehow find, retain, and have private counsel file an entry of appearance, all while trial was set for December 18, 2025—just 31 days away at that time.

### 3. Circuit Clerk Jones's Conflict of Interest

**52.** The circuit clerk present at the November 17, 2025 hearing was Defendant Lori Jones.

9

**53.** Ms. Jones is a named defendant in Plaintiff's pending civil rights lawsuit, Vernon County Circuit Court Case No. 25VE-CV00685, in which Plaintiff alleges similar violations by Jones, Stiles, and Crowell.

**54.** Ms. Jones personally controlled the electronic recording of the November 17, 2025 hearing—the sole official record of what was said—while being an adverse party to Plaintiff in active litigation.

**E. Plaintiff's Attempts at State Court Relief: Three Denied Petitions, a lawsuit in Vernon County Missouri against defendants, a lawsuit in Cole County Missouri against defendants, extraordinary Writ of Mandamus against Judge Carrier in the Missouri Court of Appeals Southern District Case No. SD39272**

**55.** Plaintiff has not sat idly by while his rights were violated. Plaintiff out of necessity has aggressively pursued every available state court remedy. All have been denied, proving state remedies are inadequate.

**Missouri Supreme Court Case No. SC99275 (August 23, 2021)**

**56.** Plaintiff filed a Petition for Writ of Prohibition against Judge Raymond Gross alleging Judge Gross had a disqualifying conflict because Judge Gross as a private attorney for the Plaintiff had personally prepared Plaintiff's lease/purchase contract for the property at issue in the criminal charges, yet Judge Gross refused to recuse himself and presided over Plaintiff's arraignment. Supreme court Writ was denied without prejudice.

**57.** The Missouri Supreme Court denied the petition without explanation.

**Missouri Supreme Court Case No. SC100831 (October 29, 2024)**

**58.** Plaintiff filed a Writ of Prohibition against Judge R. Craig Carter alleging Judge Carter failed to compel testimony from subpoenaed witnesses Joshua Johns and Curtis Dobbs, thereby denying Plaintiff a fair trial. The Writ was denied without prejudice. Furthermore, Missouri Attorney Generals have admitted Judge Carter indicated to Wright County Circuit Clerk Lori Jones that the bond in case 22WR-CR-00553 would be held in lieu of the current criminal case 22WR-CR00256 effectively consolidating the cases without a court order. Plaintiff argues Defacto case consolidation.

**59.** The Missouri Supreme Court denied the petition without explanation.

**Missouri Court of Appeals Southern District Case No. SD39272 (November 13, 2025)**

**Missouri Supreme Court Case No. SC101381 (November 20, 2025)**

**60.** On November 13, 2025, Plaintiff filed a Writ of Mandamus and Emergency Motion for Stay of Proceedings and Protective Order in the Missouri Court of Appeals Southern District. Writ was denied without opinion November 14, 2025. On November 20, 2025, Plaintiff filed an Emergency Petition for Writ of Prohibition against Judge Carrier challenging the November 17, 2025 unrepresented questioning and the 13-month denial of conflict-free counsel.

**61.** On November 21, 2025, the Missouri Supreme Court denied the petition without explanation.

**62.** Notably, the November 21, 2025 noon deadline for Plaintiff to produce counsel came and went. **Plaintiff was not arrested.** This demonstrates that the bond condition was **retaliatory**, not based on any legitimate state interest.

**This Four-Year Pattern Proves Systemic Failure**

**63.** These three denied petitions, spanning from 2021 to 2025 and involving three different judges (Gross, Carter, Carrier), establish a **pattern of systemic failure** in Missouri courts, not isolated incidents.

**F. Plaintiff Remains Without Counsel—Trial in 24 Days**

**64.** As of today, November 24, 2025, Plaintiff remains **without any counsel whatsoever**. Trial is set for **December 18, 2025—just 24 days away**.

**65.** Since the November 21, 2025 Judge Carrier's order, Plaintiff has desperately attempted to find representation. Despite being indigent, **not a single attorney would accept the case**.

**66.** Reasons given by attorneys included:

- Insufficient time to prepare (trial in less than one month);
- Complexity of the case and volume of discovery;
- Concerns about taking a case with such obvious constitutional violations;

11

- The case is "too hot" politically given Plaintiff's history as a candidate against state officials.

**67.** Plaintiff's **formal indigency determination of October 29, 2024 remains in effect**. Under Missouri law and the Sixth Amendment, Plaintiff's remains entitled to appointed counsel.

**G. The Criminal Charges and Exculpatory Evidence Defendants Are Suppressing**

**1. The Two Overlapping Cases: 22WR-CR00553 and 22WR-CR00256**

**68.** Plaintiff faces charges in Case No. 22WR-CR00256. These charges arose from a civil dispute over property.

**69.** Plaintiff was a Felony defendant in the related Case No. 22WR-CR00553. Plaintiff was found guilty at jury trial of Misdemeanors for posting a You Tube video documenting harassment at the property still in controversy and is set for trial December 18, 2025 Case No. 22WR-CR00256 . Case No. 22WR-CR00553 has been disposed of. The $3,500 cash bond posted in that case was wrongfully withheld in lieu of Case No. 22WR-CR00256 per Judge Carter's indication for approximately eight months.

**2. De Facto Consolidation Without Court Order**

**70.** These two cases involved distinct charges with common factual basis.

**71.** State actors informally consolidated the cases through coercive tactics:

- Using Plaintiff's **$3,500 cash bond** posted in Case 553 as leverage in Case 256;

- Withholding the Case 553 bond for approximately **eight months**;

- Refusing to return the bond until Plaintiff threatened legal action.

**72.** On November 7, 2025, in Cole County Case No. 25AC-CC06707, the Missouri Attorney General's Office admitted this was improper, stating that Judge Carter indicated the bond should be retained "in lieu of" the bond in Case 256.

**73.** This **de facto consolidation without court order** violated due process by:

12

- Depriving Plaintiff of notice and opportunity to contest consolidation;

- Using bond from one case as coercive leverage in a related case;

- Creating confusion and prejudice.

### 3. The Rejected Plea Offer and Subsequent Retaliation (October 16, 2023)

**74.** On October 16, 2023, Plaintiff's then-counsel Benjamin Arnold received a plea offer from Prosecutor Weatherman offering to dismiss felonies in exchange for:

- Misdemeanor harassment (10 days jail); or

- Felony harassment (probation).

**75.** The email explicitly stated the offer applied to **"both cases" (553 and 256)**, proving the informal de facto consolidation without court order.

**76.** The email also included a conversation about the requested personnel records of law enforcement, which the defendant had previously been denied, and which the Plaintiff feels were being used as a bargaining chip," demonstrating prosecutorial leverage tactics.

**77.** Plaintiff **rejected the plea offer** and exercised his constitutional right to trial.

**78.** Following Plaintiff's rejection of the plea offer, state actors escalated enforcement actions through a systematic pattern of retaliation:

- Withholding Plaintiff's $3,500 bond for eight months (admitted by Attorney General);

- Denying conflict-free counsel for 13+ months;

- Systematically silencing Plaintiff's attempts to raise conflicts;

- Imposing the impossible November 17 bond condition immediately after 13 months of delay.

### 4. The July 30, 2025 Depositions: Exculpatory Evidence That Should Have Ended This Case

**79.** On July 30, 2025, depositions were taken of two key witnesses in the prosecution's case:

13

- **Ronald P. Raymond** (the alleged victim);

- **Ron Lee Stehle** (key prosecution witness).

**80.** These depositions revealed **highly exculpatory evidence** that directly contradicts the prosecution's theory.

### Ronald P. Raymond Deposition - The "Victim" Admits No Knowledge

**81.** Ronald P. Raymond, the alleged victim, made the following admissions under oath:

- Raymond admitted he had **no direct knowledge** of the alleged theft (Page 52 of deposition transcript);

- Raymond stated his own daughter, **Deborah Brizio** (a key prosecution witness), was the **actual suspect** for stealing guns and china from Raymond (Pages 24, 43);

- Raymond implicated witness Ron Lee Stehle in a conspiracy to take Plaintiff's land and burn documents;

- Raymond's testimony directly contradicts the prosecution's theory that Plaintiff committed the alleged offenses.

### Ron Lee Stehle Deposition - Witness Admits Crimes Against Plaintiff

**82.** Ron Lee Stehle, a key prosecution witness, made the following admissions under oath:

- Stehle admitted **assaulting Plaintiff** by throwing Plaintiff's phone during an encounter (Page 42);

- Stehle admitted **carrying a sidearm during encounters** with Plaintiff for the purpose of intimidating him (Page 46);

- Stehle admitted **printing targets with Plaintiff's image** and leaving them near Plaintiff's home with "violators will be shot" signs (Page 47);

- Stehle identified **alternate suspects**, including "meth heads" in the area (Page 38);

14

- **None of Stehle's admitted crimes have been prosecuted**, demonstrating selective enforcement and bias.

**83.** This evidence is classic *Brady v. Maryland*, 373 U.S. 83, 87 (1963), material because it:

- **Impeaches key prosecution witnesses** (both Raymond and Stehle have credibility problems);

- **Suggests alternate perpetrators** (Raymond's daughter Deborah Brizio; "meth heads" identified by Stehle);

- **Demonstrates witness bias and animus** toward Plaintiff (Stehle's campaign of intimidation and threats);

- **Exculpates Plaintiff** by showing he was the victim of a conspiracy and harassment campaign.

### 5. Prosecutor Weatherman's Knowing Suppression of This Evidence

**84.** Despite having the July 30, 2025 deposition transcripts showing Raymond and Stehle's devastating admissions, Prosecutor Weatherman has:

- **Failed to disclose** this exculpatory evidence affirmatively to defense counsel;

- **Continued to pursue prosecution** based on testimony he knows is contradicted by his own witnesses;

- **Sought and opposed continuances** that would allow proper investigation and development of this evidence;

- **Scheduled trial for December 18, 2025**, knowing Plaintiff lacks counsel to effectively present this exculpatory evidence.

**85.** On **October 23, 2025**, even Plaintiff's own conflicted counsel, Attorney Stiles, filed a **"Motion to Compel and for Sanctions"** against Prosecutor Weatherman, accusing him of:

- **"Willful violation"** of discovery rules;

- Seeking **dismissal with prejudice** for prosecutorial misconduct.

15

**86.** The fact that even Plaintiff's conflicted public defender felt compelled to file a sanctions motion alleging willful discovery violations proves the egregious nature of Weatherman's misconduct.

## H. The Systematic Obstruction of Plaintiff's August 1, 2025 Response

**87.** Plaintiff's August 1, 2025 filing was a comprehensive, 36-page documented response that should have triggered immediate judicial inquiry.

**88.** For **87 days** (August 22 through November 17, 2025), Plaintiff remained trapped with conflicted counsel despite having given comprehensive, documented notice of all constitutional violations.

**89.** The Missouri Attorney General's November 7, 2025 admission confirms this was **knowing and deliberate**: "Defendant Stiles remains appointed as counsel and has not been permitted to withdraw."

## I. Tie to Vernon County Civil Suit (25VE-CV00685) and Cole County Case (25AC-CC06707)

**90.** Plaintiff has filed related civil rights actions documenting the same pattern of systemic violations:

**91. Vernon County Case No. 25VE-CV00685** (*McClanahan v. Stiles, et al.*): Ongoing civil rights suit against Defendants Stiles, Crowell, and Jones for institutional conflicts and constitutional deprivations. Recent docket entries include November 21, 2025 notice of Supreme Court proceedings and November 17, 2025 affidavits supporting disqualification.

**92. Cole County Case No. 25AC-CC06707** (*McClanahan v. Kehoe*): Action against Governor Mike Kehoe challenging the structural conflict in Missouri's public defender system. This is the case in which the Missouri Attorney General made the November 7, 2025 smoking-gun admission that "Defendant Stiles remains appointed as counsel and has not been permitted to withdraw."

**93.** These parallel cases demonstrate this is not an isolated incident but a **systematic pattern of constitutional violations** by state actors determined to protect the system while denying an indigent defendant his rights.

16

## WHY YOUNGER ABSTENTION DOES NOT APPLY

**94.** Plaintiff anticipates Defendants will invoke *Younger v. Harris*, 401 U.S. 37 (1971), arguing this Court should abstain from interfering with the pending state criminal proceeding.

**95.** *Younger* abstention does not apply here because Plaintiff satisfies **all three exceptions** to the abstention doctrine:

### A. Bad Faith Prosecution

**96.** Prosecutor Weatherman has engaged in bad faith prosecution through:

- **Brady violations**: Knowing suppression of exculpatory evidence revealed in July 30, 2025 depositions;

- **Vindictive prosecution**: Escalating enforcement after Plaintiff rejected plea offer on October 16, 2023;

- **Discovery abuse**: Even Plaintiff's conflicted public defender filed sanctions motion alleging "willful violations";

- **Proceeding without counsel**: Knowingly scheduling trial for December 18, 2025, when Plaintiff has been without conflict-free counsel for 13 months.

  *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965) (federal courts may intervene when state prosecution brought in bad faith to harass).

### B. Irreparable Injury

**97.** Forcing Plaintiff to trial on December 18, 2025, without conflict-free counsel causes **irreparable constitutional injury** that cannot be remedied by money damages or post-conviction appeals.

*Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (pretrial constitutional violations constitute irreparable injury requiring immediate federal relief; defendants need not wait until after trial).

**98.** The Sixth Amendment guarantees the right to counsel **at trial**, not merely on appeal. If this Court waits until after December 18, the constitutional violation will be complete and irreversible.

17

## C. Inadequate State Remedies

**99.** Plaintiff has **exhausted state remedies**, and they have proven completely inadequate:

- **Three Denied Missouri Supreme Court Petitions** (SC99275, SC100831, SC101381) spanning 2021-2025; and 1 Appeals Southern District SD39272.

- **Missouri Attorney General's November 7, 2025 admission** proves the state system knew of violations and did nothing;

- No state post-conviction remedy available because Plaintiff has not yet been convicted.

**100.** When the state's own Attorney General admits a constitutional violation and state courts still provide no remedy, **state remedies are inadequate as a matter of law.**

## WHY DEFENDANTS ARE NOT PROTECTED BY IMMUNITY

**100 A.** Plaintiff anticipates Defendants will assert immunity defenses. Those defenses do not apply here because Defendants acted outside the scope of their protected functions and violated clearly established constitutional rights.

**A.** Judge Carrier Is Not Protected by Judicial Immunity

**100 B.** While judges generally enjoy absolute immunity for judicial acts taken within their jurisdiction, Mireles v. Waco, 502 U.S. 9, 11-12 (1991), that immunity does not extend to acts taken in the "clear absence of all jurisdiction," Stump v. Sparkman, 435 U.S. 349, 356-57 (1978), or non-judicial administrative acts, Forrester v. White, 484 U.S. 219, 227-29 (1988).

18

**100 C.** Judge Carrier's November 17, 2025 conduct falls outside judicial immunity because questioning an unrepresented defendant at a critical stage after counsel withdrew is an investigative/administrative act, not a judicial act. Administrative orders prohibiting court access (May 16, 2025 order prohibiting pro se filings, October 20, 2025 order threatening Plaintiff's wife) are administrative acts not protected by judicial immunity. Forrester, 484 U.S. at 229.

**100 D.** Even if some conduct were deemed judicial, Plaintiff seeks prospective injunctive relief (stopping the December 18 trial), which is not barred by judicial immunity. Pulliam v. Allen, 466 U.S. 522, 541-42 (1984).

**B.** Prosecutor Weatherman Is Not Protected by Prosecutorial Immunity

**100 E.** While prosecutors enjoy absolute immunity for functions "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976), that immunity does not extend to administrative acts such as failure to disclose exculpatory evidence, fabricating or suppressing evidence, Buckley v. Fitzsimmons, 509 U.S. 259, 273-76 (1993), or investigative conduct.

**100 F.** The Supreme Court specifically noted in Imbler that a prosecutor's duty to disclose exculpatory evidence under Brady is an administrative function distinct from advocacy: "The duty to disclose exculpatory evidence, while important, does not partake of the policy considerations that support absolute immunity for the prosecutor's trial-related conduct." Imbler, 424 U.S. at 431 n.33.

**100 G.** Prosecutor Weatherman's knowing suppression of the July 30, 2025 deposition evidence constitutes an administrative failure to disclose Brady material, not protected trial advocacy. Vindictive prosecution—retaliating against

19

Plaintiff for rejecting the plea offer—is malicious prosecution not protected by immunity. Kalina v. Fletcher, 522 U.S. 118, 130-31 (1997).

**C.** Circuit Clerk Jones Is Not Protected by Absolute Immunity

**100 H.** Court clerks performing administrative functions do not enjoy absolute quasi-judicial immunity. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432-36 (1993). Circuit Clerk Jones's systematic obstruction—returning Plaintiff's filings without processing them, controlling the November 17, 2025 hearing recording while being an adverse party in Plaintiff's civil lawsuit—are administrative acts subject only to qualified immunity.

**100 I.** Qualified immunity does not protect Jones because the right to access courts is clearly established, Christopher v. Harbury, 536 U.S. 403, 415 (2002), and no reasonable clerk would believe it lawful to return a criminal defendant's filings without processing them while that defendant is attempting to raise constitutional violations.

**D.** Attorney Stiles and Director Crowell Are Not Protected

**100 J.** Public defenders who conspire with other state officials to deprive defendants of constitutional rights act under color of state law and are not protected by immunity. Tower v. Glover, 467 U.S. 914, 920-21 (1984). Attorney Stiles's conduct—withdrawing her withdrawal motion to trap Plaintiff with conflicted counsel for 87 additional days, claiming MSPD is an "Executive Agency"—constitutes conspiracy with state actors.

20

**100 K.** Director Crowell's supervisory liability—maintaining a structurally conflicted system and failing to remedy known violations—is not protected by immunity. Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010).

**E.** Qualified Immunity Does Not Protect Any Defendant

**100 L.** Even if absolute immunity does not apply, Defendants cannot claim qualified immunity because the rights violated were clearly established and the Missouri Attorney General's November 7, 2025 admission proves Defendants knew they were denying Plaintiff conflict-free counsel for 87 consecutive days. This knowing violation eliminates any qualified immunity defense.

**100 M.** No reasonable official would believe it lawful to question an unrepresented defendant at a critical stage, suppress exculpatory evidence showing the victim has no knowledge, return a criminal defendant's filings without processing them, knowingly keep a defendant with conflicted counsel for 87 days (as admitted by the Attorney General), or force an indigent defendant to trial without counsel.

## CLAIMS FOR RELIEF

### COUNT I: DENIAL OF SIXTH AMENDMENT RIGHT TO COUNSEL

### 42 U.S.C. § 1983 — Against Defendants Carrier, Weatherman, and Stiles (Individual Capacity)

**101.** Plaintiff incorporates by reference all preceding paragraphs.

**102.** The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. This right includes the right to **conflict-free counsel**. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

**103.** Defendants have **constructively denied** Plaintiff conflict-free counsel for over thirteen months.

21

**104.** Judge Carrier violated Plaintiff's Sixth Amendment right by **questioning Plaintiff on November 17, 2025**, after counsel withdrew and while Plaintiff was unrepresented, at a critical stage of the proceedings. *Rothgery v. Gillespie County*, 554 U.S. 191, 212 (2008).

*United States v. Cronic,* 466 U.S. 648, 659 (1984) (complete denial of counsel at critical stage is structural error requiring automatic reversal).

**105.** These violations were **knowing, deliberate, and in bad faith**, as proven by the Attorney General's November 7, 2025 admission.

**106.** Defendants are liable under 42 U.S.C. § 1983 for deprivation of Plaintiff's Sixth Amendment rights under color of state law.

**WHEREFORE**, Plaintiff seeks compensatory and punitive damages against Defendants Carrier, Weatherman, and Stiles in their individual capacities.

## COUNT II: BRADY VIOLATIONS AND PROSECUTORIAL MISCONDUCT

### 42 U.S.C. § 1983 — Against Defendant Weatherman (Individual Capacity)

**107.** Plaintiff incorporates by reference all preceding paragraphs.

**108.** The Due Process Clause of the Fourteenth Amendment requires prosecutors to disclose evidence favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

**109.** The July 30, 2025 depositions contain highly exculpatory evidence that Prosecutor Weatherman has knowingly suppressed.

**110.** Defendant Weatherman is liable under 42 U.S.C. § 1983 for deliberate suppression of exculpatory evidence in violation of due process.

**WHEREFORE**, Plaintiff seeks compensatory and punitive damages against Defendant Weatherman in his individual capacity.

22

## COUNT III: VINDICTIVE PROSECUTION

### 42 U.S.C. § 1983 — Against Defendant Weatherman (Individual Capacity)

**111.** Plaintiff incorporates by reference all preceding paragraphs.

**112.** Following Plaintiff's rejection of the plea offer, Defendant Weatherman escalated prosecution and allowed the withholding of bond in retaliation for Plaintiff exercising constitutional rights.

WHEREFORE, Plaintiff requests compensatory and punitive damages and injunctive relief against Defendant Weatherman in his individual capacity.

### PRAYER FOR RELIEF

Plaintiff respectfully requests:

Immediate injunctive relief barring trial on December 18, 2025, until Plaintiff is provided conflict-free counsel.

Declaratory judgment that Missouri's public defender appointment system, as applied to Plaintiff, is unconstitutional.

Compensatory and punitive damages as permitted by law.

Costs, attorney fees if eligible, and any further relief the Court deems just.

### VERIFICATION

I, Darrell Leon McClanahan III, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

In the Interest of Justice

Respectfully Submitted,

Signature: _____

Darrell Leon McClanahan III, Plaintiff

Darrell4mogov@gmail.com

Date: November 24, 2025

24346 S. 2425 Rd.

Milo, MO 64767

417-388-9595

23